## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MICHELE LEE PACHECO,**

> **Plaintiff,**

**v.**                                                              **No. 16-cv-0062 SMV**

**NANCY A. BERRYHILL,[1]**
**Acting Commissioner of Social Security Administration,**

> **Defendant.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Remand or Reverse [Doc. 23] and her Brief in Support [Doc. 24] (collectively, "Motion"), filed on July 29, 2016. The Commissioner responded on October 26, 2016. [Doc. 28]. Plaintiff replied on November 21, 2016. [Doc. 31]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 16]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet her burden as the movant to show that the Administrative Law Judge's ("ALJ") decision did not apply the correct legal standards or was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision affirmed.

### Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential process, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; and (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

economy, considering her residual functional capacity ("RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on May 27, 2009.  Tr. 18.  She alleged a disability-onset date of November 5, 2008.  *Id.*  Her claims were denied initially, on reconsideration, and by an ALJ.  *Id.*  The Appeals Council denied review, and Plaintiff appealed to this Court.  Presiding by consent, the Honorable Gregory B. Wormuth, United States Magistrate Judge, granted Plaintiff's motion to reverse the ALJ's decision and remand the matter to the Commissioner.  Tr. 529–51; *Pacheco v. Colvin*, No. 13-cv-0848 GBW (D.N.M. Oct. 6, 2014) (unpublished).

Judge Wormuth held that remand was warranted because the ALJ had failed to apply the correct legal standards in evaluating the reports from Plaintiff's treating psychiatrist, Margaret Conolly, M.D.  In particular, Dr. Connolly had assed Plaintiff's global assessment of functioning ("GAF") scores at 45 and 35,[4] in 2008 and 2011, respectively.  Tr. 330, 440.  The ALJ had not even mentioned Dr. Conolly's treatment records at all, much less the GAF scores.  The Commissioner argued that there was no error in the ALJ's failure to discuss the GAF scores.

---

[4] A GAF score is a clinician's determination on a scale of 1 to 100 of an individual's overall level of functioning. *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2010).  A GAF score of 41–50 indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *Id.* (emphases in original).  A GAF score of 31–40 indicates "**[s]ome impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  *Id.* (emphases in original).

Judge Wormuth disagreed.  He found that the GAF scores were significantly probative, and thus, it was reversible error for the ALJ not to address them.  Tr. 544–49.

Judge Wormuth also found that the ALJ had failed to apply the correct legal standard in evaluating the consultative opinion of Martin Trujillo, M.D.   Tr. 549–50; *see* Tr. 351–53 (Dr. Trujillo's report).  Dr. Trujillo had concluded, *inter alia*, that Plaintiff was "a poor candidate for routine employment, although should do well returning to school."  Tr. 353.  The ALJ assigned limited weight to Dr. Trujillo's opinion because, the ALJ figured, "if she can return to school, she ought to be able to return to sedentary work."  Tr. 25.  Judge Wormuth found error because, in rejecting Dr. Trujillo's opinion, the ALJ had relied on her own speculation instead of applying the six applicable regulatory factors.  Tr. 549 (citing Social Security Ruling ("SSR") 96-5p; 20 C.F.R. §§ 404.1527, 416.927).   Judge Wormuth remanded the case to the Commissioner for further proceedings consistent with his opinion.

Pursuant to Judge Wormuth's remand order, the Appeals Council vacated the decision of the first ALJ.  Tr. 554–55.  Because Plaintiff had filed subsequent claims for benefits, the Appeals Council ordered a new ALJ to consolidate the new claims with the ones remanded by Judge Wormuth.  The new ALJ was to create a new, single administrative record and issue a new decision on the consolidated claims.  Tr. 554; Tr. 476 (second ALJ's discussion of the procedural posture).

ALJ Deborah Rose held a second hearing on August 4, 2015.  Tr. 473.  Plaintiff appeared with her attorney.  Tr. 447, 475.  The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Mary Diane Weber.  Tr. 447, 478–97.

5

The ALJ issued her unfavorable decision on October 28, 2015.  Tr. 466.  She found that Plaintiff met the insured status requirements for disability insurance benefits through December 31, 2013.  Tr. 450.  At step one, she found that Plaintiff had not engaged in substantial gainful activity since November 5, 2008, the onset date of her alleged disability.  *Id.*  Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two.  *Id.*  There, she found that Plaintiff suffered from the following severe impairments: "fibromyalgia, degenerative joint disease, obesity, bipolar disorder, panic disorder, and posttraumatic stress disorder[.]"  *Id.*  The ALJ further found that Plaintiff's sleep apnea and hypertension were not severe.  *Id.*  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 450–53.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC.   Tr. 453–64.  In doing so, the ALJ essentially rejected the opinions of Plaintiff's treating physician, Gilbert Aragon, D.O., and treating physician's assistant ("PA"), Lisa Wentling, PA-C.  Tr. 460–62 (ALJ's rejection of Dr. Aragon's opinion), 442 (Dr. Aragon's opinion), 462–63 (ALJ's rejection of PA Wentling's opinion), 841–44 (PA Wentling's opinion).  Instead, the ALJ accorded "significant weight" to the opinions of non-examining physicians Janice Kando, M.D., and N.D. Nickerson, M.D.  Tr. 463.  Drs. Kando and Nickerson had opined that Plaintiff could perform light work with some additional postural and environmental limitations.  *See id.*  However, to accommodate Plaintiff's combination of impairments (including fibromyalgia, degenerative join disease, and obesity), the ALJ found that

6

Plaintiff could only perform a limited range of sedentary work.  Tr. 463 (ALJ's discussion of Dr. Kando and Dr. Nickerson's opinions), 453 (ALJ's RFC assessment).

In further assessing Plaintiff's RFC, the ALJ considered the GAF scores assessed by Plaintiff's treating psychiatrist, Margaret Conolly, M.D.  However, she found them to be "of limited evidentiary value" because she (the ALJ) believed GAF scores in general to be unreliable indicators of a claimant's ability to do work.  Tr. 463–64.  Further, the ALJ found that Dr. Conolly's GAF scores reflected "economic and environmental factors that [were] not intrinsic components of [Plaintiff's] mental functioning with respect to the ability to perform . . . simple, unskilled work."  Tr. 464.  The ALJ found that the low GAF scores assessed by Dr. Conolly reflected Plaintiff's "lack of employment, unresolved grief issues, and homelessness . . . which are not necessarily factors in the disability evaluation."  Tr. 463.  The ALJ gave significant weight to the non-examining opinion of Elizabeth Chiang, M.D., who opined that Plaintiff should be restricted to simple work.  *Id.* (ALJ's evaluation of Dr. Chiang's opinion); *see* Tr. 412 (relevant portion of Dr. Chiang's opinion).  However, to accommodate Plaintiff's combination of physical and mental impairments, including pain, the ALJ found that beyond a restriction to simple work, Plaintiff could only have superficial and incidental contact with coworkers and supervisors, and no interaction with the public.  Tr. 463.

The ALJ found that:

> [Plaintiff] has the [RFC] to perform a range of sedentary work as defined in 20 [C.F.R. §§] 414.1547(a), 416.967(a).  Specifically, [Plaintiff] can occasionally lift, carry, push, and/or pull 10 pounds, stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8[-]hour workday.  [Plaintiff] can occasionally climb,

> balance, stoop, kneel, crouch, crawl, but never climb ladders,
> ropes, or scaffolds or tolerate exposure to hazards.  She can
> understand  and  perform  simple  instructions,  attend,  and
> concentrate for 2 hours with superficial and incidental contact with
> coworkers and supervisors, but not public interaction.

Tr. 453.  Based on this RFC and the testimony of the VE, the ALJ found at step four that

Plaintiff was unable to perform any past relevant work.  Tr. 464.  At step five, the ALJ found

that, based on Plaintiff's RFC, age, education, and work experience and the testimony of the VE,

Plaintiff could perform work that exists in significant numbers in the national economy.  Tr. 465.

Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act,

during the relevant time period, and she denied the claims.  Tr. 466.  Plaintiff filed the instant

action on January 27, 2016, rather than requesting review by the Appeals Council, as permitted

by 20 C.F.R. §§ 404.984(d), 416.1484(d).  [Doc. 1].

## Analysis

Plaintiff makes numerous arguments attacking the second ALJ's decision.  The Court

finds that these arguments are either unpersuasive or inadequately developed for review.  The

ALJ's decision will be affirmed, and Plaintiff's motion, denied.

### Dr. Conolly's GAF scores

Plaintiff makes several arguments that relate to Dr. Conolly's GAF scores.  First, she

argues that the ALJ's rejection of the GAF scores contravened Judge Wormuth's remand order.

[Doc. 24] at 15–18; [Doc. 31] at 4–5.  The Court disagrees.  Judge Wormuth did not order the

ALJ to accord the GAF scores any particular weight on remand.  She was required only to

discuss them.  She did so.  The Court disagrees that her discussion violated Judge Wormuth's order.

Plaintiff also argues that the second ALJ was not allowed to raise any issue with the GAF scores that was not raised by the first ALJ.  [Doc. 24] at 16, 18, [Doc. 31] at 7–9.  The Court is not persuaded.  The second ALJ was not bound or limited by the findings of the first ALJ.  *See Poppa v. Astrue*, 569 F.3d 1167, 1170–71 (10th Cir. 2009) (An ALJ's decision is no longer binding when it has been reversed by the Appeals Council or a federal court; a subsequent ALJ is bound only by the Appeals Council or a federal court.).

Plaintiff also challenges the ALJ's authority to question the reliability of GAF scores in general.  [Doc. 24] at 17–18; [Doc. 31] at 5–7.  Although the Court agrees that the ALJ failed to offer any authority for questioning the reliability of GAF scores in general, she did not err in assigning them little weight in this case.  She explained that they merited little weight because they reflected Plaintiff's lack of employment, unresolved grief issues, and homelessness, rather than her mental functioning.  These reasons are legally adequate and supported by substantial evidence.  There is no reversible error in the ALJ's evaluation of Dr. Conolly's GAF scores.

## Dr. Trujillo's Opinion

Plaintiff makes numerous arguments challenging the ALJ's evaluation of Dr. Trujillo's opinion.  Dr. Trujillo examined Plaintiff once at the request of the state agency.  He opined that Plaintiff was "limited in ambulation and physical stamina primarily related to her obesity." Tr. 353.  He further stated that Plaintiff was "a poor candidate for routine employment, although should do well returning to school."  *Id.*  Otherwise he did not make any specific findings as to

the extent of her functional limitations. *Id.* The first ALJ rejected Dr. Trujillo's opinion, not based on anything in the record, but solely on the ALJ's conclusory assumption that "if she can return to school, she ought to be able to return to sedentary work." Tr. 550. Judge Wormuth remanded the case, in part, because he found that the first ALJ had failed to properly weigh Dr. Trujillo's opinion. *Id.*

The second ALJ discussed Dr. Trujillo's opinion at greater length but, in the end, accorded it little weight. Tr. 460. She explained that Dr. Trujillo had performed only a one-time examination. She further explained that the medical evidence demonstrated that Plaintiff had been receiving outpatient treatment primarily consisting of medication management. *Id.* The ALJ also noted that Dr. Trujillo's statement about Plaintiff's being a poor candidate for routine employment was not a "medical opinion" but, rather, an administrative finding. *Id.*

Plaintiff challenges the ALJ's discussion of Dr. Trujillo's opinion in numerous ways, but none warrants remand. Dr. Trujillo's statement that Plaintiff was not a good candidate for routine employment is not a "medical opinion" such that it would require findings. Rather, it is his opinion on an issue reserved to the Commissioner, i.e., whether Plaintiff is disabled. §§ 404.1527(d), 416.927(d). Dr. Trujillo's opinion that Plaintiff cannot work is entitled to no weight. *Id.* However, the specific functional limitations assessed by Dr. Trujillo (that Plaintiff is limited in ambulation and physical stamina) are medical opinions. Thus, the ALJ must either incorporate them into the RFC or explain why they should be rejected. The Court finds that Dr. Trujillo's "medical opinion" is consistent with the RFC assessed by the ALJ. Accordingly, the Court need not address Plaintiff's challenges to the ALJ's reasoning for saying that she

accorded the opinion little weight.  As a practical matter, Dr. Trujillo's assessment of Plaintiff's limitations are reflected in the RFC.

<u>Standard for Treating Physician Opinions</u>

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record.  20 C.F.R. § 404.1527(c)(2).  This is known as the "treating physician rule."  *Langley*, 373 F.3d at 1119.  The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight.  *Doyal*, 331 F.3d at 762.

In order to receive controlling weight, treating physician opinions must be both supported by medical evidence and consistent with the record.  If not, the opinions may not merit controlling weight but still must be given deference and weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 404.1527(c). However, not every factor is applicable in every case, nor should all six factors be seen as

absolutely necessary.  What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight she ultimately assigns to the opinions.   *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. § 404.1527(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two phases.  First, the ALJ must find that the opinion is not supported by medical evidence and/or is not consistent with the record.  Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above.  Like all findings, an ALJ's findings in these two phases must be supported by substantial evidence.

<u>Standards Regarding Fibromyalgia and Treating Physician Opinions</u>

"Because proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims."  *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (ellipsis and internal quotation marks omitted) (collecting cases); *see also Wilson*, 602 F.3d at 1143 (recognizing that "complaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat") (collecting cases, including cases addressing fibromyalgia).  "Since fibromyalgia only manifests itself through clinical symptoms, there are no laboratory tests that can confirm the diagnosis." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n.1 (10th Cir. 2003).

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.  The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic

> character—multiple tender spots, more precisely 18 fixed locations
> on the body (and the rule of thumb is that the patient must have at
> least 11 of them to be diagnosed as having fibromyalgia) that when
> pressed firmly cause the patient to flinch.

*Gilbert v. Astrue*, 231 F. App'x 778, 783 (10th Cir. 2007) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).   Although the existence or severity of fibromyalgia may not be determinable by objective medical tests, the Tenth Circuit Court of Appeals has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed.  *E.g.*, *Gilbertson*, 328 F.3d at 627 n.1; *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003) ("While the diagnos[i]s of . . . fibromyalgia may not lend [it]sel[f] to objective clinical findings, the physical limitations imposed by the symptoms . . . do lend themselves to objective analysis.").

When a treating physician opines as to the functional limitations resulting from fibromyalgia, an ALJ may not reject that opinion *solely* based on a lack of objective supporting evidence.  For example, in *Gilbert*, the Tenth Circuit reversed an ALJ's rejection of a treating opinion (about the functional limitations resulting from fibromyalgia) when that rejection was based on a lack of objective evidence and the ALJ had failed to address the non-objective evidence that supported the treating opinion.  231 F. App'x at 783–84.

However, in *Tarpley* and *Romero*, the Tenth Circuit affirmed the ALJs' rejections of the treating opinions because the rejections were based on more than the absence of objective support.  In *Tarpley*, the ALJ found very little in the doctors' notes supporting their assessed functional levels.  Instead, the ALJ found that evidence that seemed to contradict the doctors' assessed limitations (e.g., the plaintiff had full range of motion in her joints, had normal strength,

walked and moved without much difficulty, had been able to care for her personal needs, did household chores, went shopping, found relief with medication, and on her doctors' recommendations, stayed active with friends and family). 601 F. App'x at 643. In *Romero*, the ALJ did not rely on lack of objective medical evidence alone in rejecting the treating physician's opinion about the functional limitations of the plaintiff's fibromyalgia, which would have been error. 563 F. App'x at 621. Instead, the ALJ also relied on the plaintiff's daily activities and that she experienced relief with medication and exercise as prescribed by her doctor. *Id.* at 621–22.

### Dr. Aragon's Treating Opinion

Here, in rejecting Dr. Aragon's opinion, the ALJ noted that Dr. Aragon had been treating Plaintiff since 2012 on an outpatient basis, providing general care and medication management. She also noted that his opinion was expressed on a one-page check-box questionnaire without comment or explanation. Tr. 460–63. She further found that Dr. Aragon's opinion was not supported by his treatment records. Tr. 461 (finding that the treatment records did not evidence "acute distress" and consisted mainly of Plaintiff's subjective complaints of pain and tenderness rather than physical examination results, which are minimal). The ALJ explained that because Plaintiff herself was not fully credible, Dr. Aragon's opinion was undercut by its general reliance on her subjective complaints. Finally, she found that Dr. Aragon's opinion was not supported by certain portions of the report by one-time rheumatology consultant, Dr. Sanchez-Goettler. *Id.*

"The lack of objective test findings noted by the ALJ is not determinative of the severity of [Plaintiff's] fibromyalgia," *Gilbert*, 231 F. App'x at 784, but the ALJ here did not rely solely on the absence of objective medical evidence. The Court has considered Plaintiff's arguments

on the matter.  *See* [Doc. 24] at 36–37.  She urges that the notes cited by the ALJ related to Plaintiff's finger joints are not relevant to fibromyalgia.  *Id.* at 36 (citing SSR 12-02).  The ALJ's discussion of Dr. Aragon's opinion, however, contained many other details.  The ALJ applied the correct legal standards in weighing Dr. Aragon's opinion.  Considered together, the ALJ's reasons for rejecting his opinion satisfy the treating physician rule in the fibromyalgia context, and her reasons are supported by substantial evidence of record.  There is no reversible error.

### PA Wentling's Opinion

The ALJ found that PA Wentling's opinion (as expressed in the Fibromyalgia Questionnaire) was entitled to little weight.  Tr. 462–63 (ALJ's findings), 841–44 (PA Wentling's opinion).  The ALJ explained that, even though PA Wentling had a treating relationship with Plaintiff, she was not an acceptable medical source.  Tr. 462.  Additionally, PA Wentling continued to prescribe opiates to Plaintiff even though Dr. Sanchez-Goettler had explicitly recommended avoiding opiates.  *Id.*  The ALJ found that there was little to no evidence of treatment beyond various psychotropic and narcotic medications, coupled with self-prescribed marijuana. The ALJ further found that Plaintiff had failed to follow up on a referral to a pain-management specialist.  Tr. 463.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).  ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions."  SSR 96-5, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d

at 1161 (same) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 06-03p, 2006 SSR LEXIS 5, at *10–11).  For example, in weighing a medical opinion (regardless of its source), the ALJ must consider the *Watkins* factors listed above.  §§ 404.1527(c), 416.927(c).

The ALJ's discussion of PA Wentling's opinion is satisfactory and her findings are supported by substantial evidence.  The Court is not persuaded by Plaintiff's arguments that the ALJ impermissibly picked and chose from the opinion or should have assigned greater weight to it.  *See* [Doc. 24] at 24–26.  There is no reversible error in the ALJ's evaluation and weighing of PA Wentling's opinion.

<u>Credibility</u>

Plaintiff challenges the second ALJ's credibility findings.  [Doc. 24] at 26–36.  The district court may not re-weigh the evidence; it reviews an ALJ's decision only to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted).  Boilerplate language, however, is insufficient.  *Id.*  Instead, "it is well settled that [ALJs] must give reasons for their decisions."  *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).  Although ALJs do not have to discuss "every piece of evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler*, 68 F.3d at 391 (internal quotation marks and brackets omitted).

The Tenth Circuit Court of Appeals does not "reduce[] credibility evaluations to formulaic expressions [nor] require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)).  Finally, where pain is the subject of the credibility dispute, the ALJ should consider such factors as:

> [1] the levels of medication and their effectiveness, [2] the extensiveness of the attempts (medical or nonmedical) to obtain relief, [3] the frequency of medical contacts, [4] the nature of daily activities, [5] subjective measures of credibility that are peculiarly within the judgment of the ALJ, [6] the motivation of and relationship between the claimant and the other witnesses, and [7] the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

The ALJ indicated that she had considered all of Plaintiff's alleged symptoms, Tr. 453, and then went on to describe those symptoms, Tr. 453–455.  Ultimately, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC.  Tr. 454.  The ALJ then elaborated on these findings.   The ALJ found that Plaintiff had failed to comply with Dr. Sanchez-Goettler's treatment recommendations for her fibromyalgia.  *Id.*  She found that Plaintiff had done little to try to alleviate her pain other than use narcotics and marijuana, which "may indicate secondary gain for her reports of chronic pain."  *Id.*  She found that Plaintiff's subjective complaints were exaggerated "in light of the objective evidence," evidence that she

went on to describe in detail.  Tr. 455–56.  She found that Plaintiff had failed to follow up on a referral to a pain specialist.  *Id.*  She found that Plaintiff had significant periods during which her pain was manageable.  Tr. 455.

Plaintiff argues that Dr. Aragon and PA Wentling (i.e., her treating providers) themselves did not prescribe the treatment recommended by Dr. Sanchez-Goettler, and there was no evidence that compliance would restore her ability to work.  [Doc. 24] at 28.  Therefore, she argues that it was error for the ALJ to find that she failed to comply with her treatment and, thus, was not entirely credible.  *Id.* at 26–36.

> In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, [courts] consider four elements:  (1) whether the treatment at issue would restore claimant's ability to work;  (2) whether the treatment was prescribed;  (3) whether the treatment was refused;  and, if so, (4) whether the refusal was without justifiable excuse.

*Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).  Here, the ALJ made no findings on whether compliance with Dr. Sanchez-Goettler's recommendations would restore Plaintiff's ability to work, nor did she discuss whether Plaintiff's alleged refusal (to comply) was justified.  Nevertheless, the ALJ's credibility findings are adequate, and remand is not warranted.  Even disregarding non-compliance with treatment, the ALJ's credibility findings are still closely and affirmatively linked to substantial evidence.

For example, the ALJ found that Plaintiff had done little to try to alleviate her pain other than use narcotics and marijuana, which "may indicate secondary gain for her reports of chronic pain."  Tr. 454.  She found that Plaintiff's subjective complaints were exaggerated "in light of the objective evidence," which she went on to describe in detail.  Tr. 455–56.  She found that

18

Plaintiff had failed to follow up on a referral to a pain specialist.  *Id.*  She found that Plaintiff had significant periods during which her pain was manageable.  Tr. 455.

Plaintiff also challenges these other bases for the ALJ's credibility findings.  She argues that she should not be faulted if she cannot afford treatment.  [Doc. 24] at 29.  However, she does not develop the argument.  In fact, she does not even indicate what treatment she cannot afford. *See id.*  Although the Court agrees with Plaintiff that, generally, a claimant's credibility should not be doubted solely because she cannot afford treatment, it is unclear how Plaintiff intends to apply that general principle to this case.

Plaintiff suggests reasons why a reviewer might question Dr. Sanchez-Goettler's recommendations (e.g., the recommendations are not specific to Plaintiff but, instead, are a regurgitation of "textbook practice recommendations").  *Id.*  She cites to evidence that could support her preferred credibility finding (e.g., her "copious" use of pain medications, even marijuana, was always monitored by her providers; the "longitudinal" evidence is susceptible to a finding that Plaintiff is entirely credible).  *Id.* at 28–35.  The Court has carefully considered these arguments but finds them unpersuasive.  At bottom, these arguments are an invitation to re-weigh the evidence, which is beyond the authority of this Court.  *See*, *e.g., Langley*, 373 F.3d at 1118.  There is no reversible error in the second ALJ's credibility determination.

<u>Third Party Statements</u>

The Court is not persuaded by Plaintiff's challenge to the ALJ's evaluation of the third party statements of her sister-in-law and mother.  [Doc. 24] at 38.  The ALJ expressly considered the statements.  Nothing more was required.  *See* Social Security Ruling 06-03p, 2006 SSR

LEXIS 5, *15–16 ("Although there is a distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from [third party lay witnesses] or otherwise ensure that the discussion of the evidence . . . allows a . . . subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") (emphases added).  There is no reversible error in the ALJ's evaluation of the third party statements.

Burden of Proof at Step Five

Plaintiff argues that the ALJ erred in her statement of the burden at step five.  [Doc. 24] at 38–39.  The Court is not persuaded that remand is warranted.  Regardless of how the ALJ *described* the burden at step five, she *applied* it correctly.  The ALJ relied on the testimony of a vocational expert—provided by the Commissioner—to find that Plaintiff could perform other work that existed in significant numbers in the national economy.  The Court fails to see any error in the application of the step-five burden.

Other Alleged Errors

Plaintiff complains that the second ALJ found fewer severe impairments at step two than the first ALJ found.  [Doc. 24] at 37–38.  She argues that second ALJ "removed" sleep apnea, chronic obstructive pulmonary disease, and hypertension from the step-two impairments.  *Id.* However, the second ALJ was not bound by the findings of the first ALJ.  *See Poppa*, 569 F.3d at 1170–71 (An ALJ's decision is no longer binding when it has been reversed by the Appeals Council or a federal court; a subsequent ALJ is bound only by the higher body.).   More

20

importantly though, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the second ALJ found several severe impairments at step two and proceeded through the sequential evaluation process.

Plaintiff also presents numerous factual arguments that could support weighing the medical opinions in the record differently than did the second ALJ. *See* [Doc. 24] at 22–24 (e.g., the ALJ could have accorded more weight to Dr. Conolly and PA Wentling's opinions considering how long they had treated Plaintiff and with what frequency, and considering the recency of their opinions compared to the recency of the non-examining opinions). The Court understands the point. The record could support giving more weight to the treating opinions. But that is not the standard for the instant motion to remand. This Court cannot re-weigh the evidence. The standard here is whether the second ALJ applied the correct legal standards and whether her findings are supported by substantial evidence. The Court finds that the second ALJ's decision passes muster.

Finally, Plaintiff alludes to—but fails to develop—several other arguments. As just one example, Plaintiff argues that the second ALJ failed her duty of inquiry by not re-contacting her treating providers "instead of relying on the inference and nuance noted above [in her brief]." [Doc. 24] at 37. Other than further describing the rules regarding development of the record, Plaintiff fails to elaborate on the circumstances in her case that she believes triggered the ALJ's duty to re-contact her providers. The Court cannot speculate. This point—and there are several others like it—is not sufficiently developed for review. Thus, the Court finds that any argument

21

not explicitly addressed in this Memorandum Opinion and Order has been insufficiently developed and is waived.  *See Wall v. Astrue,* 561 F.3d 1048, 1065 (10th Cir. 2009) (An issue is waived if not adequately supported by "developed argumentation.") (internal quotation marks omitted).

      **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Remand or Reverse [Doc. 23] is **DENIED**.  The Commissioner's final decision is affirmed.

      **IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**